LIEBIG'S EXTRACT OF MEAT CO., Limited, v. LIBBY, McNEILL & LIBBY et al.

(Circuit Court, N. D. Illinois.   July 5, 1900.)

**1.** Trade-Marks—Common-Law Rights.

The royal pharmacy in Munich having used the name "Liebig" for many years to designate the meat extract manufactured by it, with the permission of Baron Liebig, the originator of the process of manufacture, his consent during the same time to the use of the name by the Liebig's Extract of Meat Company, Limited, cannot lay the foundation for a common-law right in the latter company to the exclusive use of such name as a trade-mark.

**2.** Same—Infringement—Procurement by Owner.

The placing by a defendant upon wrappers inclosing its goods of a fac simile signature in imitation of complainant's registered trade-mark, in compliance with a special order given by agents or detectives acting for the complainant, does not constitute an actionable infringement of the trade-mark.

**3.** Same—Unfair Competition.

Complainant, Liebig's Extract of Meat Company, Limited, had sold its product in the markets of the United States for many years, and it had attained a wide reputation, when defendant entered the market with a similar extract, distinctively dressed, but subsequently sent out goods in a package so similar to complainants in color and general appearance as to show that deception was intended, and liable to result, in the sale of the goods to ultimate purchasers; and it further used on such packages, as the name of the producer, the fictitious title of "Liebig Fluid Beef Co." *Held*, that it was guilty of unfair competition, which entitled complainant to an injunction.[1]

In Equity.   Suit for infringement of trade-mark and for unfair competition.   On final hearing.

Arthur Steuart and James L. Steuart, for complainant.

Bond, Adams, Pickard & Jackson, for defendants.

SEAMAN, District Judge.   The issues involved in this case are interesting and important, and, after hearing the oral arguments, which were quite full, and reading the briefs, I have examined such of the testimony as seemed essential to complete understanding of the controverted facts.   Regarding the allegations of the bill sufficient for raising either issue presented by the testimony,—infringement of trade-mark rights and unfair competition,—I deem it unnecessary to review the various propositions argued in the briefs, or the testimony at large, and state my conclusions only on the facts and law so far as material for a decree.

1. As to any common-law trade-mark right in the name "Liebig" in connection with "extract of meat or beef": This collocation came into use under the following circumstances:   Baron Liebig was an eminent German chemist, and president of the Royal Academy of Sciences at Munich, and became interested philanthropically in the subject of producing a meat extract from material otherwise wasted, which would greatly benefit mankind.   He published in 1847 a formula by which an extract was obtained free from gelatin and fat, and this is substantially the present process of the complainant.

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

His writings upon the subject were extensive and well known. Whether he was the originator of the formula, in that view, is not material for the purposes of this case, as the evidence is clear of its popular acceptance in association with his name, and of numerous publications of like purport prior to the use of the name by the complainant or its alleged predecessors in title, and the publications on the part of the complainant have so asserted constantly. Moreover, this extract was manufactured at the royal pharmacy in Munich (owned by the king, with Dr. Pettenkofer as director) from 1848 up to 1865, when the Fray Bentos Company commenced operations; and independent manufacture was continued at the royal pharmacy, under the name of "Liebig's Extract of Meat," long after 1865,—the use of such name being, by permission of Baron Liebig, given to Dr. Pettenkofer in 1852, and thereafter so employed at the royal pharmacy. In 1863 the Fray Bentos Company was organized to manufacture this extract in South America on a large scale, entered into operation in 1865, and was succeeded by the complainant company, an English corporation, in 1866; the operations of the latter company commencing in 1867, and since continuing with greatly enlarged production, and reaching the markets of the world, including sales in the United States, which have become very extensive. These corporations successively named their product "Liebig's Extract of Meat," with the assent, unquestionably, of Baron Liebig and Dr. Pettenkofer, who gave their names, for a consideration, to the *inspection* of the product as sent to the German headquarters for such purpose and for distribution; and the royal pharmacy served as a distributing agent with the goods so named, although continuing on its part the same use for its separate production, which it is claimed was carried on only through the early years, and up to a time when a sufficient supply for their market could be furnished by the complainant. I find no testimony which shows devolution of title from the royal pharmacy in the use of this name for the extract, nor that such use was treated or referred to as material in any agreements prior to a grant of such right made by Baron Liebig individually to the complainant by an instrument dated April 12, 1866; and this is clearly insufficient foundation for an exclusive common-law right, in view of the prior use for many years in the royal pharmacy under a grant which remained in force and in use thereafter. Both English and continental decisions relating to the trade-name right asserted here on the part of the complainant are brought into this record, and the former are peculiarly instructive upon this point. namely, Meat Co. v. Hanbury, 17 Law T. (N. S.) 298, and Same v. Anderson, 55 Law T. (N. S.) 206, culminating in the House of Lords decision in 1885, and are all against such right. The continental decisions sustain the right, but, founded upon registries of trademark, are not strictly applicable, and clearly not controlling for the point under consideration here. The complainant entered the markets of the United States in the light of the facts recited, and of the English decisions as well, and cannot maintain exclusive trade-mark right to the designation of extracts of meat under the generic name of "Liebig"; and this, aside from any question of possible limitation of

its rights through the registration of certain trade-marks in this country. In this connection the objection of the complainant to the pleadings and matters contained in the records of the English cases offered on the part of the defendant is sustained, to the extent of excluding them from consideration as evidence in this case. Ex-cepting possibly the sworn answer of Rotter in the Anderson Case (which may be admissible by way of an admission on behalf of the complainant), they can be considered only to ascertain the scope of the decisions as precedents, and not as tending to prove any facts in controversy here; and in reaching the conclusion above indicated the Rotter answer is likewise left out of consideration. City of Carlsbad v. Kutnow, 35 U. S. App. 753, 18 C. C. A. 224, 71 Fed. 167.

2. As to the trade-marks registered in the United States: The con-tention relates mainly to the fac simile signature, "J. V. Liebig" (re-ferred to as the "signature in blue"), stamped diagonally across the face of the wrapper. Infringement is alleged in two forms of "Walker" exhibits and one "Lansing" exhibit, but no cause of action-able infringement is clearly established against the defendant. The "Lansing" form was made by employés of the defendant upon a spe-cial order given by agents or detectives acting for the complainant, and, however competent as evidence tending to show intention or state of mind on the part of the defendant, the making, under the circumstances shown, does not constitute infringement of the trade-mark. The Walker form of signature, shown in the admitted label, "Walker Wrapper No. 2," is not such an imitation in signature as to constitute infringement per se of the registered trade-mark. If the Walker signature, presented in the bill as "Complainants' Ex-hibit Defendant's Wrapper," is so manifestly an imitation as to infringe this trade-mark, the evidence, mostly circumstantial, offered to charge the defendants with such making, is deemed insufficient to overcome the testimony on the part of the defendants by which their participation is positively denied, and Walker and other wit-nesses testify to their independent production by Walker in New York. I refrain from further comment on the testimony of Walker, as another action is pending which involves his conduct.

3. Of unfair competition: The manufacture of the beef extracts in question is open to all the world, and the manufacture in accord-ance with the Liebig formula is equally open to the defendants un-der that name, "subject, however, to the condition that the name must be so used as not to deprive others of their rights, or to de-ceive the public, and therefore that the name must be accompanied with such indication that the thing manufactured is the work of the one making it, as will unmistakably inform the public of that fact." Singer Mfg Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. The complainant has possessed in the United States a trade in its products for more than 30 years, and for many years its trade has been of great extent, aided by large expenditures for advertising. The defendant entered the market with an extract which was well distinguished in the marking and the color of the package, but subsequently, in the Walker transaction, at least, adopted a dress for the goods which clearly simulated that of the

complainant, and was calculated to deceive. It assumed as the name of the producer the fictitious title of "Liebig Fluid Beef Co.," with the label, stamped in blue, "J. Walker," and the color and general appearance of the package closely resembled that of complainant. It is true that "Union Stock Yards, Chicago, U. S. A.," appears on this label; but, taking all the circumstances, it is evident that deception was both intended and liable to arise, in palming off the goods upon ultimate purchasers as those of complainant. The other exhibits, which bear the same color and fictitious title, taken with the shape and general appearance, although without blue signature, are deemed obnoxious and inexcusable under all the circumstances. Charles E. Hires Co. v. Consumers' Co. (C. C. A.) 100 Fed. 809. I am of opinion that the complainants are entitled to a decree for the protection of their good will, enjoining the defendants from such simulation of the label and name of the complainant. The injunction will apply to each of the forms of outer wrapper above indicated, but will not extend to jars or pots in use, nor to the neck labels, inner labels, or certificate, as neither of these is deemed objectionable, within the rule and to the extent demanded for such protection.

The question whether an accounting shall be ordered, in the view indicated, and under the circumstances shown (with exclusive agency in Corneille, David & Co.), is left to be determined in connection with the framing of a decree, when the question of costs will also be settled. Let the decree be prepared by counsel for complainant, to be submitted to the other side, and a hearing will be granted at such time for the final form of decree.