LIEBIG'S EXTRACT OF MEAT CO., Limited, v. WALKER et al.

(Circuit Court, S. D. New York. April 4, 1902.)

**1. UNFAIR COMPETITION—IMITATION OF NAME AND DRESS.**

Complainant, Liebig's Extract of Meat Company, Limited, manufactured and sold in the market extract of meat, put up in two-ounce jars, having a wrapper and a neck label, and capped with a metallic capsule. The label had printed thereon the name of the goods, "Liebig's Extract of Meat," its own name as maker, and a fac simile signature of "J. v. Liebig," in blue script, running diagonally across the printed matter. Defendant entered the market with an extract of meat put up in jars of the same size and shape, having a neck label and wrapper of substantially the same material and appearance, printed in the same colors. They contained the name of the goods, "Liebig's Extract of Beef," and the names "Liebig Fluid Beef Company" and "Liebig Beef Company," both shown by the evidence to be fictitious. Diagonally across the wrapper was the fac simile signature "J. T. Walker," in blue script, closely imitating in appearance the signature on complainant's wrappers; and other portions of the reading matter were also similar. *Held*, that the dress of defendant's goods was evidently intended to deceive the public into buying such goods as those of complainant, and constituted unfair competition, which entitled complainant to an injunction restraining defendant from using the name "Liebig's Fluid Beef Company," or simulating the name or labels of complainant in any manner which would deceive purchasers of ordinary intelligence, using ordinary care.[1]

**2. TRADE-MARKS—COMMON-LAW RIGHTS—LIEBIG'S EXTRACT OF MEAT.**

Liebig's Extract of Meat Company, Limited, of London, has no common-law trade-mark in the name "Liebig," as prefixed to the words "Extract of Meat," similar rights in the use of the name having been previously granted by Baron Liebig to others; and such name has become a generic designation of the article, when prepared by the Liebig process, which may be used by any manufacturer or vender.

**3. SAME—UNFAIR COMPETITION—GROUNDS FOR RELIEF.**

The Liebig process of making extract of meat not being a trade secret, but free to be employed by all, a court of equity cannot enjoin a manufacturer or dealer from designating his product as "Liebig's," at suit of a rival dealer, on the ground that it is not in fact made by such process, and the designation is therefore fraudulent; that being a question which can only arise between seller and purchaser.

**4. SAME—EFFECT OF REGISTRATION—NAME WHICH HAD BECOME PUBLICI JURIS.**

The registration of the name "Liebig's Extract of Meat" as a trademark in the United States by a foreign manufacturer could confer no exclusive right where the article was previously known and sold in this country under such name as a generic designation, and where, moreover, such manufacturer had no trade-mark rights in the name in its own country.

In Equity. Suit for infringement of trade-mark and for unfair competition. On final hearing.

James L. Steuart (Steuart & Steuart, of counsel), for complainant. Hubert A. Banning, for defendant J. T. Walker.

HAZEL, District Judge. This suit, in its original form, was commenced against J. T. Walker, trading under the name and style of J. T. Walker & Co., the H. M. Anthony Company, a corporation, Henry

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v Harper & Bros., 30 C. C. A. 376.

M. Anthony, and Charles F. Sullivan. Subsequently, pursuant to stipulation between counsel for complainant and counsel for all defendants except J. T. Walker, an order was made by Judge Coxe permitting a discontinuance as to the stipulating defendants. At the hearing a motion was made to amend the bill of complaint by striking out the defendants against whom the suit was discontinued, and charging the defendant Walker with the acts complained of. The defendants are residents of the state of New York, and in the original bill were charged with intent to injure the complainant by fraudulently diverting and securing to themselves the profits and emoluments connected with the sale of complainant's product, known and designated as "Liebig's Extract of Meat." It is further alleged in the bill that the manufacture and sale of this article by the defendants were carried out pursuant to a conspiracy with Libby, McNeill & Libby, an Illinois corporation, not a party to this suit, to defraud the complainant. It was insisted on the argument that a discontinuance as to some of the defendants required a dismissal of the bill against all defendants on the ground that the interests of the defendants are inseparable. I am quite well satisfied that a decree can be made without affecting the rights of any absent parties. The defendants against whom the suit was discontinued are not indispensable; hence their absence is not fatal. The bill cannot be considered in any sense as a new bill, and the amendment is therefore allowed.

The gist of the amended bill charges that the defendant Walker has sold and continues to sell extract of meat manufactured by Libby, McNeill & Libby, contained in similar jars, labeled and inscribed in substantial resemblance to jars, wrappers, and labels used by complainant in the sale of its extract of meat. Complainant's wrapper has printed thereon the name of the goods, "Liebig's Extract of Meat," name of maker, "Liebig's Extract of Meat Co., Limited," and a fac simile trade-mark signature of "J. v. Liebig," in blue, running diagonally across the printed matter on the wrapper. The jar contains two ounces of meat extract, and is corked and capped with metal capsule, on which appear the words "Liebig's Extract of Meat Co., Limited, London." It has printed upon a narrow label wrapped around the upper part of the jar the words, "Examined and Approved by the Director of the Scientific Department and Control. Dr. M. von Pettenkofer and Dr. Carl von Voit Delegate." The printed matter upon the neck label is in black on white paper, and upon the wrapper in red and black. It has printed thereon, in addition to the words already stated, the words, "Extractum carnis Liebig." The defendant's jar is of the same size and shape as that of complainant. The neck label and wrapper is of substantially the same material and appearance. Upon the neck label are printed in black letters the words, "Examined and Approved by the Director of the Scientific Department of the Liebig Fluid Beef Company"; and upon the wrapper are printed the words, in red and black letters, "Liebig's Extract of Beef, Depots, New York, Chicago, Prepared by Liebig Beef Co. (Extractum carnis Liebig)." And diagonally across the printed matter on the wrapper appears the script signature in blue, "J. T. Walker," in close imitation of "J. v. Liebig." The jars, neck label, wrapper,

and the printed matter thereon, used by both parties, quite closely conform. Taking these facts into consideration, together with the similarity of the products of both parties, unfair competition is charged by the complainant. The proofs satisfactorily show that "Liebig's Fluid Beef Company" was and is a fictitious concern. The wrappers used by the defendant having printed thereon "Liebig's Fluid Beef Company," either with or without the signature of "J. T. Walker" across the face of the printed matter, are clearly imitations of the complainant's wrapper. The signature of the defendant impressed upon the wrapper in blue, whenever used, is imitative of the blue fac simile script signature used by the complainant. The defendant, therefore, must be enjoined from using on his goods a wrapper and neck label having printed thereon the words "Liebig's Fluid Beef Company," as shown by the proofs, and which in color and general appearance clearly simulate that of the complainant, and are calculated to deceive the public. The defendant, by using a neck label and wrapper containing words from which it may be inferred that its product is that of complainant's make, manifests its indubitable purpose to deceive the public and palm off the defendant's extract as that manufactured by complainant. A similar suit to the one at bar, brought by complainant against Libby, McNeill & Libby and others, of Chicago, Ill., was tried in the Seventh circuit. The complainant there maintained, as here, that the defendant, by the use of the word "Liebig" as applied to the use of his product, infringed complainant's common-law trade-mark right in the nomenclature of Liebig, as prefixed to the words "Extract of Meat." Liebig's Extract of Meat Co. v. Libby, McNeill & Libby (C. C.) 103 Fed. 87. This claim was determined adversely to complainant. In the Chicago case, complainant's right or title to the word "Liebig" was directly involved. A common-law trade-mark right to the name of "Liebig" was insisted on. Judge Seaman, in an exhaustive and well-considered opinion, found that there was no evidence showing devolution of title from the Royal Pharmacy, from which complainant claims title in the use of the name "Liebig" in connection with "Extract of Meat"; that the grant of such right by Baron Liebig to the complainant, April 12, 1866, was clearly insufficient to establish such right, in view of prior agreements and use of the name and formula in the manufacture of extract of meat by the Royal Pharmacy. Reference is made by Judge Seaman to English and Continental decisions on the right of complainant to maintain an exclusive trade-mark right in the designation. He held that the designation and its equivalent were common property; that it has many years since become the commercial name of the article, and therefore the defendant in that case had a right to its use. He held the defendant, however, guilty of unfair competition, and enjoined it from simulation of the label and name of complainant. By order subsequently entered, the court directed that "the defendant, Libby, McNeill & Libby, be perpetually restrained and enjoined from using the word 'Liebig' in association with the word 'Company,' in any form or combination of words, to indicate the maker, distributer, or vender of its extract of meat, and from using such words associated together in any manner whatsoever which

could lead purchasers of its extract of meat to believe that it emanated from complainant, and was the complainant's extract of meat, which is always associated with the complainant's corporate title of 'Liebig's Extract of Meat Company, Limited.'" The use of the external wrapper marked "Liebig Fluid Beef Company," either with or without the signature diagonally across the face of the printed matter thereon in fac simile of the script signature, which would be a colorable imitation of the blue fac simile script signature of the complainant company, was also enjoined, as well as the use of the wrapper for the sale of extract of meat, which would be a colorable imitation of complainant's. Judge Seaman followed the case of Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, affirming the rule there stated, and held that, as the manufacture of beef extract in accordance with the Liebig formula is equally open to the defendants under that name, they may so designate the meat extract manufactured by them. His opinion then quotes the following from the Singer Mfg. Co. Case, supra:

"Subject, however, to the condition that the name must be so used as not to deprive others of their rights, or to deceive the public, and therefore that the name must be accompanied with such indication that the thing manufactured is the work of the one making it as will unmistakably inform the public of that fact."

The defendant, therefore, in the sale of his extract of meat, is required to offer his product in such a manner as not to lead an intending purchaser of ordinary intelligence, using ordinary care, into the mistaken belief that he was purchasing an article manufactured by another.

Defendant stoutly maintains that the determination of the court in Liebig's Extract of Meat Co. v. Libby, McNeill & Libby, supra, is res adjudicata on all questions involved in this suit. I do not think so. The defendant here was not a defendant in the Illinois case, and the goods as they were offered to the public were of different appearance. The wrapper has printed upon it the words "Liebig Beef Company," and "Liebig Fluid Beef Company," and has printed in blue diagonally across it a script signature in close imitation of the fac simile signature of "J. v. Liebig." This fac simile signature did not appear upon defendant's wrappers in the Chicago case. Moreover, Judge Seaman held that the evidence in that case showing Libby, McNeill & Libby's connection with the Walker signature in imitation of the signature of "J. v. Liebig" was insufficient to overcome the testimony on the part of the defendants by which their participation in the use of such a wrapper was denied, and especially as Walker and other witnesses gave testimony that Walker's production in New York of "Liebig's Extract of Meat" was independent of defendant Libby, McNeill & Libby. In view of these facts, the Libby Case cannot be held to be res adjudicata. White v. Chase, 128 Mass. 158. I concur in the opinion of Judge Seaman that the word "Liebig," prefixed to "Extract of Meat," or in connection with the sale of meat, has long since ceased to signify the origin of its manufacture, and has become a generic description of the article sold by complainant under that designation. The language employed by

Judge Wallace in his dissenting opinion in Rahtjen's American Composition Co. v. Holzapfel's Composition Co., 41 C. C. A. 334, 101 Fed. 263, aptly applies. He says:

"So long as Rahtjen and his associates and successors in business enjoyed a monopoly of the manufacture of the article, the name not only identified the characteristics of the article, but also denoted the source of manufacture; but when the monopoly ceased, and the article passed into the domain of public property, the name which had been its generic designation also passed. Their monopoly has ceased to exist in this country, as well as abroad, and the property in the name can no more survive here than it can abroad."

This view has been sustained by the supreme court decision in this case in review, and which will be considered later.

The question whether complainant has ever had an exclusive right to the designation "Liebig's Extract of Meat" has also received unusual consideration in the courts of England. Meat Co. v. Hanbury, 17 Law T. (N. S.) 298; Same v. Anderson, 55 Law T. (N. S.) 206; same in house of lords decision in 1885. I deem it, therefore, entirely unnecessary to again review the facts upon which are based those decisions holding adversely to complainant's claim of the exclusive right to the use of the name "Liebig" in connection with the manufacture and sale of extract of meat. Complainant insists, however, that, as the defendant has given no proof of the truthfulness of the assertion printed upon his label that his goods are manufactured according to the formula of Baron Liebig, complainant is injured, and that this court, in the absence of such proof, should enjoin an apparent deception upon the public; that the United States trademark rights of the complainant are independent of trade-mark rights obtained in other countries, and, although the words "Liebig's Extract of Meat" may be generic, still the sale of such meat extract by defendant deceived the public, and is a fraud upon the complainant, if a secondary meaning of these words be shown in the United States. To supplement the first proposition advanced, complainant argues that its proof establishes that its extract of meat is manufactured according to the formula of Baron Liebig, and that, in the absence of proof on the part of the defendant that he employs the process of Baron Liebig, this court, in the exercise of its equitable power, should enjoin the use of the words "Liebig's Extract of Beef" on defendant's labels. A sufficient answer to this contention is that Baron von Liebig never regarded his formula as a trade secret. The record is replete with proof that the process of manufacturing extract of meat according to his formula was made public many years since. The public is presumed to be acquainted with the process. As it is no longer a secret process, a purchaser of "Liebig's Extract of Meat," using ordinary care in selection of the article purchased, cannot be fraudulently induced to accept a different product. Obviously, if a purchaser, believing that jars purchased by him contain "Liebig's Extract of Meat," should discover that such jars contain some other commodity, and that a fraud has been practiced upon him, he has his remedy for damages at law. It would, however, be extending the power of a court of equity beyond its proper sphere to hold that a rival dealer in a commodity may successfully apply to that court to

enjoin and restrain the manufacture and sale of a product or article that any one may manufacture and sell, even though a sale of the article is fraudulent. The case of City of Carlsbad v. Kutnow, 18 C. C. A. 24, 71 Fed. 168, cited by counsel, is distinguishable from the case at bar. There the city of Carlsbad gave a contract for a term of 15 years, by which it conveyed the sole and exclusive right to sell the products of Carlsbad Springs, including salts in crystallized and powder form. The complainant gave by contract to Eisner & Mendelson Company the sole and exclusive right to sell said product in the United States. The court held that as the city of Carlsbad had not used the name upon any but generic salts derived from the spring waters, and there being no evidence that it authorized or acquiesced in such use by any other person, it was infringement to sell articles of salts in no way derived from the Carlsbad waters under the name of "Improved Effervescent Carlsbad Powder." In the case at bar the primary question, as we have seen, is decided against the complainant. No sole and exclusive right to the formula is found. In Hiram Walker & Sons v. Mikolas (C. C.) 79 Fed. 955, it was admitted that the whisky bottled and sold by defendants as "Canadian Rye Whisky" is not made in Canada. The statement on the labels that the whisky was distilled and bottled by H. S. Ramsey & Sons, of London, Ontario, was admittedly untrue, and no such firm was in existence. In Buckland v. Rice, 40 Ohio St. 526, it was shown by the complainant that "Trommer's Extract of Malt" was not made by Trommer's formula, but by a formula of one Gessner. In none of these cases had the article sold become common property.

The trade-mark of complainant was registered in England, October 25, 1876, and in the United States, June 30, 1885. The contention that a secondary meaning of the words "Liebig's Extract of Meat" arises in the United States because of independent right conferred by the trade-mark is untenable. The supreme court of the United States, in Holzapfel's Composition Co. v. Rahtjen's American Composition Co. (decided Oct. 21, 1901) 22 Sup. Ct. 6, is decisive of this contention. In that case the trade-mark "Rahtjen's Composition, Holzapfel's Manufacture," was registered after the defendant company had commenced the manufacture of paint, and had sent the same to the United States under that description, and as early as in 1884. The court said:

"The United States registered trade-mark could not, therefore, interfere with the prior, but not exclusive, right of the defendant to the use of these words."

The doctrine of the Rahtjen Case would seem to apply to the case at bar, where the generic appellation was known in this country long prior to registration of the trade-mark. In the Rahtjen Case the supreme court further said:

"In the manufacture and sale of the article, of course, no deceit would be tolerated; and the article described as 'Rahtjen's Composition' would, when manufactured by defendant, have to be plainly described as its manufacture."

It follows, therefore, from the foregoing, that the defendant Walker has the right to designate his product by the name "Liebig's Ex-

tract of Beef," for such it must be assumed to be. But in doing so he must use clear and unmistakable words which will identify his own product as such, and not that of "Liebig's Extract of Meat Company, Limited, London." The language of Judge Seaman in the Chicago case, declarative of complainant's right to injunction, aptly applies:

"The complainants are entitled to a decree for the protection of their good will, enjoining the defendants from such simulation of the label and name of the complainants. The injunction will apply to each of the forms of outer wrapper above indicated, but will not extend to jars or pots in use, nor to the neck labels, inner labels, or certificate, as neither of these is deemed objectionable, within the rule and to the extent demanded for such protection."

The record, which is a voluminous one, clearly shows that the objective purpose of the complainant was to establish an exclusive right to the words "Liebig's Extract of Meat." The defendant is a dealer in meat extracts, and purchases his commodity from Libby, McNeill & Libby, who were involved in the Chicago suit, and by whom an accounting was directed by the court. The damages which the complainant claims to have sustained are due to the use of the generic name of the meat extract, as well as to unfair competition. As much difficulty would be experienced in proving any damages,—indeed, it is doubtful whether any damages could be recovered,—no accounting is directed. Little v. Kellam (C. C.) 100 Fed. 353; Hires Co. v. Consumers' Co., 41 C. C. A. 71, 100 Fed. 813. By far the greatest amount of money has been expended in taking proof on the main question involved. The charge of unfair competition is merely supplementary. Considerable testimony was taken both abroad and in the United States. English and Continental decisions, writings and lectures by Baron von Liebig and others, are printed in the record. No reason exists why Walker should contribute to the payment of a record which appears not to have been necessary to substantiate a violation of a United States registered trade-mark, or an act of unfair competition. The complainant is awarded costs, but, in computing the same, only such costs and disbursements are allowed, to be taxed by the clerk, as relate to unfair competition by defendant Walker. A decree in accordance with the foregoing opinion may be entered.