KAHN et al. v. W. A. GAINES & CO.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1908.)

No. 2,700.

1. TRADE-MARKS AND TRADE-NAMES—INFRINGEMENT—PRIOR USE.

The right of defendants to use in their trade the words "Old Crow," or "Crow," as applied to whisky, could not be measured by the extent to which they employed it, it being sufficient, to protect them from a charge of infringement of plaintiff's alleged monopoly of such term as a trademark, that defendants used the same in connection with their business as whisky dealers prior to any appropriation thereof by complainant, and continued so to use it; nor could defendants' right to use it ad libitum be destroyed by the greater amount of complainant's sales under the designation of "Old Crow," or by the asserted superiority of complainant's product.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 24, 25, 31.]

2. SAME—EVIDENCE—RECORD IN OTHER CASES.

Where, in an action for infringement of complainant's right to the use of the terms "Crow" and "Old Crow" as a name for whisky and for unlawful competition, complainant claimed that defendants' whisky sold under such brand was fraudulent, impure, and deleterious, the record and evidence in a prior case brought by complainant for infringement of its trade-mark, to which defendant was not a party, while inadmissible

as proof of the issues on trial, was competent for the information of the chancellor as to the scope of the decision in the prior case as a precedent.

[Ed. Note.—Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper Bros., 30 C. C. A. 376.]

3. SAME—UNFAIR COMPETITION.

In an action for infringement of plaintiff's alleged trade-mark and for unlawful competition, evidence *held* insufficient to show that defendants' whisky, sold under the name of "Old Crow," or "Crow," in competition with plaintiff's whisky, sold under the same name, was deleterious or fraudulent, or that defendant was guilty of unfair competition in the use of such names.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

For opinion below, see 155 Fed. 639.

Jacob Klein and Luther Ely Smith (Warwick M. Hough and A. J. Freiberg, on the brief), for appellants.

James L. Hopkins (Daniel W. Lindsey, on the brief), for appellee.

Before SANBORN, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge. The appellee (complainant below), obtained decree in the Circuit Court establishing its asserted claim to the words "Old Crow" as a trade-mark, enjoining appellants (defendants below) from the use thereof in their business, finding the defendants guilty of unfair competition in business, and ordering an accounting.

The original bill was filed in November, 1904. The bill alleges that the complainant is the sole and exclusive owner of a trade-mark for whisky consisting of the words "Old Crow," which words were open to adoption as a trade-mark for whisky in the year 1867, when the complainant's predecessor in business, Gaines, Berry & Co., adopted and commercially applied the said trade-mark for whisky distilled by them, and that it acquired by assignment said trade-mark, which has been continuously applied by it and its predecessors in business upon packages containing whisky from the year 1867 to the time of filing the amended bill. The bill further alleges that in 1835 one James Crow became domiciled upon Glenn's creek, Woodford county, Ky., when and where he began the manufacture of whisky of superior quality, which became designated about that time as "Crow," or "Old Crow," and that he was continuously engaged in the distillation of whisky as "Crow" or "Old Crow" to his death in 1855; that at that time a considerable quantity of said whisky remained upon the market and was commercially known and dealt in until the year 1867; that no whisky was produced during said period anywhere to which the word "Crow," or "Old Crow," was applied as a trade-mark; that in that year a predecessor of complainant, to wit, Gaines, Berry & Co., began the production on said Glenn's creek of their whisky, using the same process and material theretofore used by said Crow; that from 1835 to this time the words "Old Crow" have been applied continuously to whisky produced by the process of Crow, and to no other whisky whatever; that the distillation and produc-

tion of said whisky has always been on said Glenn's creek, and not elsewhere. The bill further alleges that Abraham M. Hellman and Moritz Hellman, the defendants, had been guilty of fraudulent acts and unfair competition in selling a spurious compounded liquor as and for the complainant's whisky, to its damage in the sum of $5,000, and prayed for an accounting.

The answer denied specifically the allegations of the bill and alleged the ownership of the word "Crow," "Old Crow," "J. W. Crow," and the celebrated "Crow Bourbon," together with a figure of a crow, in connection with their own business upon packages of whisky in their and their predecessor's business, and so continued the use thereof from the year 1863 and prior thereto; alleging that the whisky sold by complainant under the words "Old Crow" was an unrefined, harmful, and deleterious article, and that the whisky sold by them was a blend largely free from impurities. The replication was general. The defendants filed a cross-bill, claiming the trade-mark in question and asking for an injunction. This need not be considered, as at the hearing the defendants' counsel declined to insist upon any affirmative relief.

The evidence tended to show that a man named James Crow, usually called "Jim Crow," and sometimes known as "Crow," or "Old Crow," began the manufacture of whisky in Woodford county, Ky., about the year 1850. The evidence does not show that he ever owned or operated any distillery in his own right, but worked for persons owning distilleries. He died about 1855. Prior to his death he worked at various distilleries in that neighborhood, to wit, at the Edwards distillery, at Anderson Johnson's distillery, at Jack Johnson's distillery, at Johnson & Yancey's, at Oscar Pepper's distillery, and at Capt. Henry's distillery. Whisky made by him was called "Crow," or "Old Crow," as stated by one of the witnesses, just as whisky made by Taylor was called "Old Taylor." The process employed by Crow was what is known as "hand-made" whisky; but there was no secrecy about his process, nor did it differ materially from that employed by other distilleries of the same period. He used in the manufacture the grain grown in the neighborhood, which was not different from that grown in the Western states. When he worked at Johnson & Yancey's distillery, it was not known as "Crow's" whisky, but as "Johnson & Yancey's." The old Oscar Pepper's distillery, at which Crow at one time worked, was run by various distillers from 1855 to 1865. This whisky was called "Old Oscar Pepper," and was sometimes called "Old Crow." The men who worked with him understood the process employed by Crow and used it in other distilleries.

The copartnership firm of Gaines, Berry & Co. began business as distillers in Woodford county, Ky., in 1867 and operated the old Pepper distillery as claimed successor. This concern was later succeeded by W. A. Gaines & Co. a copartnership, which on the 9th day of July, 1882, filed in the Patent Office at Washington, D. C., application for registering the following as a trade-mark:

"Old Crow Distillery. Woodford County, Kentucky. Copper Distilled Whiskey. W. A. Gaines, Distiller."

161 F.—32

Accompanying this application was the statement that "this trademark we have used in our business since January, 1870." In 1887 W A. Gaines & Co. incorporated under the same name. In June, 1904, shortly before the institution of this suit, and after controversy had arisen between the complainant and the defendants respecting the use of the name of "Crow," or "Old Crow," in business, the complainant corporation filed in the Patent Office application to register as a trade-mark the words "Old Crow." The sworn statement of the officer of the company accompanying the application asserted that:

"This trade-mark has been continuously used by the said W. A. Gaines & Co. and its predecessors since the year A. D. 1835."

To say the least of it, these different statements show some juggling with facts and disclose inconsistent positions. The record does not show any written devolution of title or right of trade-mark passing from Gaines, Berry & Co. to W. A. Gaines & Co., and from the latter to the complainant corporation. Be this as it may, no unprejudiced mind can read the evidence in this case without the impression that the conception of a trade-mark in the words "Crow," or "Old Crow," did not enter the mind of Gaines, Berry & Co. prior to 1870; and they may not, under the issues presented by the pleadings, lay any claim thereto anterior to 1867. It is to be conceded that after 1870 Gaines, Berry & Co. and W. A. Gaines, and their successors, W. A. Gaines & Co., built up a large, successful business in the manufacture of whisky, which has extended throughout the country, and that their whisky, under the designation of "Old Crow," attained wide celebrity. The question remains, however, to be answered: Has the complainant maintained by proof the assertion that the defendants, or their predecessors in business, wrongfully invaded its exclusive right to the use of the words "Crow," or "Old Crow," in business?

The evidence, without contradiction, establishes the following facts: That as early as 1862 the firm of I. & L. M. Hellman, composed of Isaac Hellman and Louis M. Hellman, were engaged in the wholesale liquor business on Pine street, in the city of St. Louis, Mo.; that as early as 1862 or 1863, on the whisky barrels employed in their trade, they had a bird with wings spread, in imitation of a crow, burnt into the head of the barrel, and the word "Crow," or the words "Old Crow," were burnt beneath this figure. This fact is affirmed by the testimony of Mr. Herman A. Haeussler, an attorney at law of St. Louis, whose reputation for intelligence and integrity is such as to entitle it to full credence. The firm of lawyers with which he was connected, whose office was the next door to the business house of the Hellmans, acted as counsel for I. & L. M. Hellman in the conduct of their business. Mr. Haeussler testified that as early as 1862–63, they had a brand of "Crow Whisky"; that he saw the barrels on the sidewalk ready to ship, with the figure of a crow either on the barrels or on the signs (and he thinks the barrels), with the word "Crow." The evidence further shows that as early as 1865 they had signs in frame prepared, displayed in the windows

of their storehouse, like Exhibit No. 6, represented by the following cut, large numbers of which were used in connection with their whisky trade:

Some of the books of said firm kept at that time were in evidence, and showed sales of whisky, sometimes designated as "Crow," and "J. W." or "J. C. Crow." That they used also the designative term "Old Crow" appears in the testimony of several witnesses. Mr. Charropin of Covington, La., testified that he entered the employ of I. & L. M. Hellman about November, 1866, and continued therein until 1870; that he traveled first through Illinois and parts of Missouri, and afterward in the South as far as New Orleans, and in Tennessee,

Arkansas, and Mississippi. He gave the names of parties to whom he had sold Hellman's whisky, and deposed that he sold to customers "Old Crow" whisky which the Hellmans handled, and that he remembered it was the brand used at the house at the time. Mr. Schaeffer, of Yazoo City, Miss., testified that he had dealings with I. & L. M. Hellman in 1866, and probably the latter part of 1865, and that he purchased liquor from them under the name of "Crow," or "Old Crow."

"Q. Will you describe what marks, if any, these barrels bore? A. They had on one end of the barrel a bird, with wings spread out, burnt in the head of the barrel, and the words 'Old Crow' were burnt under them. They were all burnt, not marked; burnt in the wood."

Mr. Heron, of Memphis, Tenn., testified that he entered the employ of I. & L. M. Hellman, in September, 1865, and remained with the firm until 1882 or 1883, as assistant rectifier. He identified Exhibit No. 6 as similar to the one used when he went there.

"Q. Now, will you state, Mr. Heron, how frequently the firm sold whisky as 'Old Crow' whisky during the time you were in the employ of the firm? A. Well, I couldn't say how often I sold it; but, to the best of my knowledge, there was very seldom a month or week that some did not go out. Q. By whom was the 'Old Crow' sold by the firm made? A. It was blended right in the house. You could call it blending or compounding right in the house."

This condition continued up to 1867, during which the bill alleges the claimed trade-mark had not been appropriated by the complainant. In August, 1867, Isaac Hellman died. The business of this house has been continously conducted in St. Louis, up to the time of this litigation, by the brother and their sons, who succeeded thereto, doing business under the name of I. & L. M. Hellman, employing the same brands and designation in business. Their trade was confined principally to states down the Mississippi river and southwest. Several of the men who worked for this house between 1862 and 1870, as well as several of the traveling salesmen of the house, are living and gave their depositions in this case. Since 1867 this house has conducted its business as theretofore, with no knowledge carried home to its members that the complainant, or its predecessors in business, were asserting any proprietary right to the use of the word "Crow," or "Old Crow," in trade. The evidence fails to show that the Hellmans, prior to this controversy, ever heard of Glenn's creek, in Woodford county, Ky. The whisky sold by them carried with it, plainly marked on the packages, the fact that it was the whisky of I. & L. M. Hellman, of St. Louis, Mo., or the name of the firm at the time in business. There is not a particle of evidence in this record to warrant the imputation that at any time or place the defendants ever represented that their whisky was manufactured on Glenn's creek, or that it was the manufacture of the complainant. There is no evidence that any purchaser from them was ever deceived into the belief that he was obtaining from them whisky manufactured by the Glenn's creek monopoly. There is, therefore, no foundation in fact or law for the charge of unfair competition.

After alleging in the bill of complaint that by reason of the defendants' unfair competition the complainant has been damaged in the sum of $5,000, and its vast business jeopardized and threatened with destruction by the defendants' competition, its counsel, to impair the evidence that the Hellmans had sold whisky as far back as 1863 under the name of "Crow" and "Old Crow," tacked course in argument by asserting that this use was so rare as to subject it to the maxim "de minimus lex non curat." The right of the defendants to use in their trade the designative words "Old Crow," or "Crow," cannot be measured by the extent to which they employed it, whether more or less frequent at times. It is sufficient to protect them from the charge of an unlawful invasion of the complainant's claimed monopoly that they used in connection with their business as whisky dealers the trade-name in question prior to any appropriation thereof by the complainant, and that they have so continued to use it. Neither can their right to use it ad libitum be destroyed by the overshadowing comparative amount of the complainant's sales under the designation of "Old Crow" whisky, nor by the asserted superiority of its product.

Passing by the criticism made by defendants' counsel of the words "Old Crow" as a trade-mark, on the ground that in its origin it referred merely to the name of "Crow" as the compounder of that grade of whisky, and that its later use was merely designative of the quality of the article, and, therefore, it might not constitute a technical trade-mark if the complainant employed the words "Old Crow" and "Crow" in its trade as designating the quality of the whisky sold by it, the defendants are not guilty of an invasion of the asserted exclusive monopoly of the complainant.

The bill stigmatizes the defendants' business as fraudulent, in imposing upon the public a blended whisky, impure and deleterious. And what it lacks in proof of this its counsel has undertaken to supply by invective and epithets. The learned trial judge, from his opinion in the record, seemed impressed as to this charge of the bill by the opinion of the Kansas City Court of Appeals in the case of W. A. Gaines & Co. v. E. Whyte Grocery Fruit & Wine Co., 107 Mo. App. 570, 81 S. W. 648. It is assigned for error that the court admitted in evidence the entire record, including the voluminous evidence in the bill of exceptions, in that case. In view of the conclusion reached by us on the merits, we may pass by this criticism with the observation that, while the evidence in that case could not be employed as proof of the matters in contestation in the case here under review against this appellant, who was not a party to that suit, it could be considered by the chancellor for his information as to the scope of the decision in that case as a precedent. Liebig's Extract of Meat Co. v. Libby et al. (C. C.) 103 Fed. 87 -89; N. Y. Filter Mfg. Co. v. Jackson (C. C.) 112 Fed. 678–680; Liebig's Extract of Meat Co. v. Walker (C. C.) 115 Fed. 822–825; American Bell Tel. Co. v. Wallace Electric Co., (C. C.) 37 Fed. 672; Rose v. Fretz (C. C.) 98 Fed. 112; Adams v. Tannage Patent Co., 81 Fed. 179, 26 C. C. A. 326

The evidence, especially on the part of the defendants, in the case under review, is so materially different in character and effect from

that in the case tried in the Jackson county circuit court, as also in that of Gaines & Co. v. Leslie, 25 Misc. Rep. 20, 54 N. Y. Supp. 421, cited by complainant's counsel, as to render them of no controlling force on the facts involved in and the principles of law applicable to this case. The only evidence touching the character of the whisky sold by the Hellmans is that it was blended whisky—a mixture of so-called straight whisky with refined spirits from which, the blenders claimed, the largest possible percentage of impurities were removed. Whether this made it better or worse than that manufactured by the complainant does not affect this case. No customer of the Hellmans is complaining, and the complainant has failed to show that the defendants palmed off their whisky on anybody as that of the complainant's manufacture.

The complainant lays much stress upon the situs of its distillery on Glenn's creek, in Woodford county, Ky., as if there were some peculiar virtue in the air and water of that place adapted to the distillation of whisky, which it had in some way wholly appropriated. The evidence does not show that Glenn's creek in any way entered into the composition of the whisky. The water used came from the springs some distance from the creek, in nowise different from other springs in the limestone region of the Blue Grass district of Kentucky. We fail to perceive the relation of all this to the claimed trade-mark. As there was no secret about the process of distillation employed by James Crow, which the complainant assumes to follow, as "hand-made" whisky (and there was some evidence that the complainant now employs machinery in some material respect in the process of manufacture), the use of which process is not secured to the complainant by any patent, and as the defendants have not claimed to use either Kentucky corn, water, or air in the composition of their blended whisky, and did not represent that it came from Glenn's creek, all these matters are quite immaterial on the issue of unfair competition in trade.

After a careful consideration of the mass of relevant and irrelevant evidence in this record, our conclusion is: (1) That inasmuch as the defendants' predecessors in business, prior to the use or the adoption of the designative word "Crow," or the words "Old Crow," as a trade-mark, employed those words as descriptive terms in connection with their business as dealers in whisky in St. Louis, Mo., and said predecessors and the defendants so continued to use the same, to a limited extent, up to the time of the institution of this suit, in good faith, they are not guilty of infringing the complainant's claimed trade-mark; and (2) that the defendants are not guilty of having engaged in unfair competition with the complainant in the prosecution of their business.

It results that the decree of the Circuit Court must be reversed, and the cause remanded, with direction to the Circuit Court to dismiss the bill of complaint.