## W. A. GAINES & CO. v. ROCK SPRING DISTILLING CO. et al.

(District Court, W. D. Kentucky, at Owensboro. February 7, 1913.)

1. TRADE-MARKS AND TRADE-NAMES (§ 96*)—JUDGMENT—CONCLUSIVENESS—SUBSEQUENT REGISTRATION.

Where, in a prior suit for infringement of a trade-mark, complainants were found not to be the rightful owners thereof, it being determined that H. & Co. had previously used the mark and were entitled thereto, such determination was res adjudicata of that issue as between the parties and their privies, and was not affected by complainant's subsequent ex parte registration of the trade-mark as authorized by Act Cong. Feb. 20, 1905, c. 592, § 6, 33 Stat. 726 (U. S. Comp. St. Supp. 1911, p. 1462), and this though defendant's cross-bill for affirmative relief in such former proceeding was dismissed; the result being to leave both parties free to use the mark as they pleased.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 109; Dec. Dig. § 96.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNLAWFUL COMPETITION—OLD CROW.

Where defendant's right to use the words "Old Crow" as a trade-mark in the sale of whisky had been adjudicated prior to appellant's attempted ex parte registration of the name as a trade-mark, and it appeared that, while such name had been originally limited to straight whisky, both complainant and defendant had later applied it to "blends," and that complainant's registration of the mark did not limit the use of the word to straight whiskies, and defendant's labels were not such as to mislead the public to believe that the whisky put out under such name was complainant's, the predecessors of both parties having used the name for over 45 years, complainant was not entitled to enjoin its use on the theory of unlawful competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

In Equity. Bill by W. A. Gaines & Company against the Rock Spring Distilling Company and others. On final hearing. Bill dismissed.

See, also, 179 Fed. 544.

James L. Hopkins, of St. Louis, Mo., and Trabue, Doolan & Cox, of Louisville, Ky., for complainant.

Luther Ely Smith, of St. Louis, Mo., and Sweeney, Ellis & Sweeney, of Owensboro, Ky., for defendants.

EVANS, District Judge. From time to time, as questions arose during the progress of this case, we expressed our views upon them in opinions then filed. Those opinions, if it be necessary or desirable, can be referred to in connection with what we may now say without repeating them.

The complainant, a corporation, by its bill, alleges an infringement by the defendants of a certain trade-mark, which, on the 20th day of July, 1909, had been admitted to registration in the office of the Commissioner of Patents under the provisions of the act of February 20, 1905. The trade-mark is familiarly known as "Old Crow," and is described in the certificate of registration as being used upon "Straight Bourbon and Rye Whisky."

Upon the allegations of the bill an injunction was prayed for, together with other relief.

On May 2, 1910, the Hellman Distilling Company tendered and asked leave to file a petition, in which it alleged that it was the transferee and successor of A. M. Hellman & Co., who long previously to the transfer to the petitioner had owned the trade-mark referred to in the bill of complaint; that the defendants Rock Spring Distilling Company and Silas Rosenfeld were petitioner's agents in Kentucky, and as such were using the trade-mark; that it had undertaken to defend them in such use, and thereupon prayed that it might be admitted as a defendant in the suit for the purpose of making such defense. The court expressed then its opinion ([C. C.] 179 Fed. 545) that the petitioner could not, in the face of complainant's opposition, be made a defendant, but that any estoppel by the former judgment referred to in the petition and presently to be described, would, under the facts therein stated, be available for the defendants.

[1] Thereafter the defendants interposed a plea to the effect that, long before the registration of the trade-mark by the complainant, the latter, on November 11, 1904, had filed its bill of complaint in the Circuit Court of the United States for the Eastern District of Missouri, at St. Louis, against A. M. Hellman & Co., a firm composed of Abraham M. Hellman and Moritz Hellman, in which it alleged itself to be the owner and proprietor of the trade-mark Old Crow, when used in connection with whisky, and, charging that the defendants were infringing it, had sought an injunction against them to prevent such use; that both sides in that suit claimed ownership of the trade-mark Old Crow; that, after the death of Abraham M. Hellman, his administrator, Max Kahn, was made a defendant, and the issues of fact were made up in that case in due course of pleading; that it was finally brought to trial in that court, whose judgment was rendered therein against said defendants who were enjoined from using said trade-mark ([C. C.] 155 Fed. 639); that the defendants in said cause thereupon prosecuted an appeal from said

judgment to the Circuit Court of Appeals of the Eighth Circuit, which court, after full consideration and argument, reversed, on April 27, 1908 (161 Fed. 495, 88 C. C. A. 437), the decree of the Circuit Court and remanded the case with directions to the latter court to dismiss the action for want of equity; and that the latter court had, by its decree, entered on July 10, 1908, done as directed by the Circuit Court of Appeals. The defendants pleaded the final judgment in that cause in bar of the present action. When the plea was set down for argument and heard the court in an opinion and judgment thereon, on May 2, 1910 ([C. C.] 179 Fed. 544), held that the plea was sufficient in law. Instead of dismissing the bill, the court gave leave to the complainant to take issue on the plea, which was done. The court also, in its opinion filed February 27, 1912, stated its reasons for giving the defendants leave to answer such parts of the complainant's bill as were not covered by the plea. This was done upon authorities cited in the opinion last referred to. The defendants, in the answer thus allowed to be filed, assailed the registration of the trade-mark upon various grounds. At the final hearing the issues thus raised, alike upon the plea and upon the answer, were heard and argued. As already stated, it will serve little or no purpose to restate the grounds of our former rulings, as the several opinions heretofore filed in the case do that with a clearness quite sufficient to indicate the bases of our several rulings; but a brief summary of the essential facts as we find them may not be amiss in disposing of the plea.

Many years ago, probably in 1835, one James Crow, in Woodford county, Ky., began the use of the trade-mark Crow or Old Crow in connection with Bourbon whisky of his own make. He continued the use of his trade-mark until his death in 1855, at which time its use was discontinued. In 1867, one Mitchell, a former employé of Crow's, in the same or in a contiguous locality in Kentucky, began the use of the same trade-mark on whisky. He did this on his own initiative and without having in any way inherited or purchased the right to use the trade-mark from Crow or his heirs or representatives. It is therefore only from Mitchell's use of the trade-mark, begun in 1867, that complainant's claim can come. But four years previously to the beginning of its use by Mitchell, namely, in 1863, the use of a similar trade-mark was begun in reference to whisky in St. Louis, Mo., by persons who have transmitted their rights to the defendants. It was out of this general state of fact that the controversy arose which was adjudicated finally in the Circuit Court of the United States for the Eastern District of Missouri. Whatever may have been the merits of the controversy which that court determined in that case we are not to inquire, nor are we to inquire into the merits of the whisky made or sold by either party thereto. The question we are to determine on this phase of the case is whether, in its essential elements, the title adjudicated in that case was the same as the one again attempted to be litigated in this action. When we attentively examine the record, the pleadings, and the final decree in the former cause, we cannot doubt that the essential question in dispute there was the same as that involved here. This being so, and the defendants and the Hellman

Distilling Company having in due course succeeded to the rights of A. M. Hellman & Co., we hold that the plea has been established, and that it is a bar to the relief now sought as to the infringement of the alleged trade-mark.

But the defendants in that cause were denied an injunction upon their cross-bill asking that relief, and it is insisted that that shows that neither themselves nor their successors have any rights in the trade-mark inasmuch as the record shows that they dismissed their cross-appeal from that part of the judgment in that case. We have not been able to see how that affects the question here involved, because, whatever effect may be given the denial to defendants of the relief they sought in that action, it is certain that in the most impressive way it was adjudged that the complainant had no equity to the relief it there prayed. At most, it might be said that the result of that litigation was to leave both parties to it, each of whom had used the trade-mark for about 40 years, free to use the trade-mark as each pleased in connection with whisky. Indeed, it might probably be that the proper conclusion is that the effect would be to open up the use of the trade-mark in connection with whisky to the public generally, because no one party had acquired a right to its exclusive use since Crow's death in 1855. Which of the views thus indicated be right is immaterial, but they afford suggestive illustration of the situation.

Again, it is insisted by the complainant that it uses the trade-mark in connection with "straight" whiskies, while the defendants have heretofore used it in connection with "blends." The bill of complaint, as we shall see, charges a broader use. The general doctrine, we apprehend, is that a trade-mark used in connection with any class of things must apply to all the various species or grades of that class. It would be an endless task to differentiate the various grades or qualities of whisky or many other articles of merchandise and say to which one or more of them a trade-mark was appropriate or applicable. Especially, we apprehend, would this be so in reference to whisky, which has as great a variety of grades (extending from the very best to the very worst) as probably any article in commerce. Some of the authorities illustrating this view are Layton Pure Food Co. v. Church & Dwight Co., 182 Fed. 35, 38, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274, and authorities therein cited, and Collins Co. v. Oliver Ames & Sons Corporation (C. C.) 18 Fed. 561, 570.

Another question of vital importance is to be considered. It is whether the registration obtained by the complainant is effective and available to overthrow a judgment finally, and under the direction of the Circuit Court of Appeals, rendered by the Circuit Court previous to the registration of the trade-mark. In an opinion delivered on February 27, 1912, we endeavored to clearly indicate our views on this phase of the case and our reasons for supposing that it was never in the contemplation of Congress that such a registration, especially if obtained ex parte, should invalidate the solemn judgment of a court having jurisdiction. The controlling facts in this connection are that on April 27, 1908, the opinion of the Circuit Court of Appeals was rendered in the former suit then styled Kahn, Administrator, et al. v.

W. A. Gaines & Co., 161 Fed. 496, 88 C. C. A. 437. After an application for a stay of the mandate was refused on June 18, 1908, the Supreme Court, on October 19, 1908, denied a petition for a writ of certiorari. On February 13, 1909, Edson Bradley, describing himself as vice president of W. A. Gaines & Co., was sworn to a statement intended to be filed as the basis of an application for the registration of the trade-mark Old Crow on straight Bourbon and rye whisky. This statement and the accompanying petition were filed in the Patent Office on February 26, 1909, nearly one year after the decision by the Circuit Court of Appeals. This latter circumstance may be most significant in connection with the fact that in the papers just referred to, and as amended later, the vice president stated under oath that W. A. Gaines & Co. in the county of Franklin and state of Kentucky "has adopted for its use a trade-mark which consists of the words 'Old Crow,' and that said trade-mark has been used in the business of ourselves and our predecessors since, to wit, January 1, 1835. The class of merchandise to which the trade-mark is appropriated is class 49, distilled alcoholic liquors, and the particular description of goods in said class upon which the said trade-mark is used is straight Bourbon and rye whisky." The vice president also swore:

"That no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use said trade-mark, either in the identical form or in any such near resemblance thereto as might be calculated to deceive."

As we have seen, it is altogether incorrect to say that the complainant and its predecessors had used that trade-mark since January 1, 1835, because the complainant and its predecessors did not begin its use until 1867, nor then, in any legal sense, as the successors of James Crow. Besides, from the testimony and developments in the suit in St. Louis, the complainant certainly knew that its opponents in that suit had been adjudged the right to use, and that they in fact had used, the trade-mark Old Crow ever since 1863, though probably not as energetically or as extensively as complainant. Yet upon these statements the registration was obtained.

The application for the registration was dealt with in the Patent Office in an entirely ex parte way, and though there was a formal publication on May 18, 1909, in the Official Gazette of the Patent Office of the notice required by section 6 of the act of February 20, 1905, the record in no way indicates that W. A. Gaines & Co. caused notice of the application to be actually given to any of those who had been defendants in the previous suit, nor that they otherwise had such notice. There is no indication in the record that those defendants ever knew of the application until long after registration had been made on July 20, 1909. While under the act of 1905 the registration, even when thus made, affords a prima facie presumption of ownership of the trade-mark in complainant, is not that presumption entirely overcome by the judgment which had been rendered against complainant in the suit in St. Louis long before the application was made, and of which litigation and judgment no information was given by the complainant to the Patent Office? To ask the question is to answer it in

the affirmative unless such ex parte registration, obtained under such circumstance, and in the way indicated, is to override the previous judgment directed by the Circuit Court of Appeals in a litigation between the opposing claimants of that trade-mark and in which all were fully heard. That such a result is impossible is, in our view, too plain for argument. Nor can we conceive that Congress ever contemplated such a result when enacting the legislation of 1905.

Notwithstanding all this, it is insisted that there is a question of unfair trade to be considered, and we find that in stating its causes of action the complainant, in its bill, while alleging an infringement of its trade-mark, also says:

"That well knowing the premises and with full knowledge of this complainant's rights above recited, the respondents above named, without the knowledge or consent, and against the will of the complainant, did on the 21st day of July, A. D. 1909, and thence continuously from day to day until the time of the filing of this bill of complaint, in violation of the complainant's rights in and to its said trade-mark consisting of the words 'Old Crow,' and in invasion of the complainant's rights under its said registration and in infringement of your orator's said registered trade-mark, and in fraud against this complainant and against the public, did make, or cause to be made, and sell or cause to be sold, in Owensboro, in the county of Daviess, state of Kentucky, a certain spurious straight Bourbon whisky not the product of this complainant's 'Old Crow' Distillery, or distilled by this complainant, or licensed to be distilled by this complainant, and that they, the said respondents, have marked or branded the same with the words 'Celebrated Old Crow Whisky Bottled in Bond,' and have caused the same to be bottled in bond, and have applied to the labels thereon the words 'Old Crow' in script type, and have caused the same to be sold and transported in commerce among the several states of America; that a specimen of the packages so made and sold by respondents is exhibited with this bill and is filed herewith as 'Exhibit B' accompanying the bill."

The bill also states:

"That the whisky so dealt in by the respondents and marked and branded with the words 'Old Crow' was so marked and branded for the purpose and with the intent to mislead and deceive the public and consumers of whisky distilled by the complainant and bottled in bond by the complainant, and the public and consumers of whisky have, by the said acts of the respondents, been led into purchasing the respondents' whisky under the false belief that it was the whisky of the complainant, and that by means of the said fraud and imposition upon the public by means of and through the instrumentality of their said unlawful appropriation and infringement of your orator's said registered trade-mark, the respondents have sold very large quantities of their whisky so falsely marked and branded, all of which wrongful acts have resulted in injury to the complainant's business and the good will thereof, and were wantonly, willfully, deliberately, and maliciously done by the respondents, to complainant's damage in the sum of $20,000."

If, in addition to an action for the infringement of a registered trade-mark, the bill shows a claim for damages for unfair trade in blended whiskies, it is probably multifarious. However, the defendants have not insisted upon that objection, and the court will not at this stage treat the bill as open to it, but will dispose of the question of unfair trade upon the entire record before it. Treating it thus, we think the record clearly shows that the defendants, in using the trade-mark Old Crow, whether in connection with a picture of a raven, as was usual, or not, used what they had a clear right to use. This be-

ing so, there could be no deception in doing that thing. This, however, is what is claimed to constitute unfair competition with complainant, and the testimony clearly shows that in other respects the defendants' labels, brands, and other marks are altogether different from complainant's and of themselves show that complainant did not make the whisky sold under defendants' brands.

[2] So that at last this phase of the case seems to resolve itself into a complaint that the defendants use the words Old Crow on their labels, brands, and other marks and probably in their advertising matter. After much consideration, we have concluded that the defendants have acted within their rights, and have attempted to sell their own whisky as being of their own make, and not as complainant's; each using the words Old Crow, as they had the right to do, and as the predecessors of each had done for over 45 years. Besides, while at the argument it was much asserted that complainant's whisky was "straight" and defendants' a "blend," the testimony indubitably shows that much of complainant's Old Crow whiskies are "blends" and so labeled under the pure food laws. As "blends" they are not within the registered trade-mark, which on its face refers only to "straight" rye and Bourbon whisky. The testimony also demonstrates that much of the defendants' whisky is bottled in bond, and is therefore necessarily "straight," inasmuch as under the statute nothing but "straight" whisky is permitted to be so bottled. So that as to "straight" whisky the complainant must be regarded as suing only on its trade-mark, while as to "blends" as well as "straight," it is suing for unfair competition in trade. And in this connection it may be stated as matter almost of common knowledge: First, that the purchaser of drinks over the counter of a barroom seldom knows or is told what he is getting, or if he is told it soon becomes a matter of indifference to him; and, second, that the wholesale or retail dealer who buys from a manufacturer generally knows exactly from whom he purchases and the character of spirits he gets. The danger to the manufacturer is, therefore, not great. The same may be said of a wholesale dealer who sells to a retail dealer.

It results that the decree now must be: First, that the plea of former adjudication is sustained; second, that the registration of the trade-mark under which relief is claimed in this action was insufficient to invalidate the judgment in the prior suit; third, that the charge of unfair trade has not been established; and fourth, that the action be dismissed, with costs to the defendants.

A decree accordingly will be entered.